Roosevelt LOGAN, Appellant,

v.

A/S HAVTOR, Appellee.

No. 8995.

United States Court of Appeals
Fourth Circuit.

Argued Sept. 30, 1963.

Decided Feb. 24, 1964.

Sidney H. Kelsey, Norfolk, Va., for appellant.

John W. Winston, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellee.

Before HAYNSWORTH, BOREMAN and J. SPENCER BELL, Circuit Judges.

BOREMAN, Circuit Judge.

Appellant, Roosevelt Logan, plaintiff below, sustained personal injuries while engaged in unloading cargo from the vessel HAVTROLL owned by the defendant, A/S HAVTOR. After a jury trial, judgment was entered for the defendant and Logan appeals. We conclude that he is entitled to a new trial.

In most general terms, Logan complained that on April 3, 1959, he was employed as a longshoreman and was assisting in unloading cargo from the above named vessel at Norfolk, Virginia; that he sustained serious and permanent injuries to his right foot; that, without fault on his part, his injuries were "proximately and wholly caused by the unseaworthiness of the said vessel and further due to the negligence and wrongdoing on the part of the defendant, its agents, the officers and members of the crew of the said vessel."

At the time of the accident, Logan was an employee of Old Dominion Stevedoring Corporation, the stevedore engaged to unload defendant's vessel. Following what appears to be the usual pattern in litigation involving injuries to longshoremen, defendant shipowner impleaded Logan's employer as a third-party defendant, claiming entitlement to indemnity (in case plaintiff recovered against shipowner) for negligence of Old Dominion's employees in breaching the warranty of workmanlike service in unloading the vessel. However, at the close of the evidence, the third-party action was withdrawn from jury consideration

and it was stipulated between the shipowner and the stevedore that this phase of the case should be submitted to the court for determination upon the evidence adduced at the jury trial.

The cargo being discharged consisted of nails contained in what were variously described as boxes, cartons or barrels. Logan and the other longshoremen were working in the No. 1 lower hold. The containers of nails were there placed on a "skid" by the longshoremen and the cargo drafts were then lifted out of the hatch and deposited on the dock by means of two electrically operated winches located on the vessel's main deck at the forward end of the No. 1 hatch. One winch was used to lower the skid into the hold and to raise it, loaded with cargo, from the hold. The other was rigged so as to operate with the first winch in maneuvering the loaded skid in position to be raised perpendicularly through the square of the hatch and for unloading the cargo on the dock. It was testified that the skids were often loaded in the wings, not directly in the square of the hatch; that the load was raised a short distance from the floor, was then swung into proper position in the square of the hatch and was lowered to the floor to eliminate swinging from side to side before the final lifting process began. The discharge operations were continuous and without incident or difficulty from early morning until midafternoon except during the lunch period. At about 2:30 o'clock a loaded skid was raised from the floor but it suddenly dropped and Logan's foot was caught beneath it.

It is undisputed that the winches are a part of the ship's gear and that each is equipped with a brake which operates automatically by means of powerful springs to hold the load suspended in space in the event of a cutoff of the power. However, there were sharp conflicts in the evidence as to circumstances and events immediately prior to and subsequent to Logan's injury. There was testimony to the effect that the power of one winch cut off and the automatic brake failed to function properly to prevent the loaded skid from dropping back from its raised position into the hold; that both winches cut off and the load dropped because the brakes failed to hold; that the loaded skid was being maneuvered from the wing into the square of the hatch at the time of the accident; that the skid had been positioned in the square of the hatch and was in the process of being raised from the hold when it dropped; that Logan was not standing in the square of the hatch but was in the wing when the skid swung around and descended on his foot; that Logan was standing in the square of the hatch when he was injured; that the two winches were used to remove Logan himself from the hold after he was injured and that they worked perfectly; that the winches were inspected and repaired immediately following the accident; that *no* repairs were made on that day and the unloading operations were completed in the usual manner, the winches operating normally and efficiently. Longshoreman Lawrence testified that he was the operator of one of the winches when Logan was injured, but other evidence indicated that Lawrence was not working on the HAVTROLL at any time on that day. Witnesses testified that it was the duty of the vessel's mates to inspect the winches and keep them in good order and repair, safe for loading and unloading, and that the winches had not been inspected and repaired within a certain period of time prior to the accident.

It was the shipowner's theory of defense that the winches were in safe and proper operating condition; that there was neither a power nor a brake failure; that in attempting to raise the loaded skid the plaintiff's fellow employees, the longshoremen winch operators, negligently permitted the loaded skid to strike the hatch coaming and intentionally and negligently permitted the load to drop back into the hold.

This appeal and an appeal in the case of Scott v. Isbrandtsen Company, Inc., 4 Cir. 1964, 327 F.2d 113, were argued and submitted on the same day. In each case an injured longshoreman appealed

from a judgment against him and in favor of the shipowner rendered by the District Court for the Eastern District of Virginia. However, the trial in each case was presided over by a different judge. In neither case was there a general verdict and in each case the judgment was based upon the jury's answer to only one of six special interrogatories.

 Over the vigorous protest and objection of plaintiff's counsel in the instant case, the trial judge chose to submit to the jury the very same special interrogatories which had been used by another judge in the trial of the Scott case. Except as to the names of the parties and vessels, the form of the six interrogatories and the order of their submission were identical.[1] As in the Scott case, the jury answered Interrogatory No. 1 in the affirmative but answered no others.

Despite the lack of specificity in the complaint, the plaintiff's theory of recovery here clearly presented primary liability issues based upon claims of unseaworthiness of the vessel's winches and the negligence of the defendant shipowner in failing to inspect and maintain them in safe operating condition and in failing to provide plaintiff a safe place in which to work. The court charged the jury at some length concerning unseaworthiness, negligence and proximate cause and instructed, as a matter of law, that Logan was free of contributory negligence. As in Scott, there were multiple issues of fact to be resolved before reaching a determination of proximate cause and liability. In Scott we found it necessary to remand the case for a new trial for the reason, *inter alia*, that Interrogatory No. 1 was so vague, uncertain and so susceptible to different interpretations as to be confusing and misleading and

by its submission plaintiff was deprived of the fair presentation of his case to which he was entitled. Reference is made to this court's decision in Scott, for a discussion of the use of Interrogatory No. 1. What we there said applies with equal force here. The plaintiff should have a new trial.

 Unlike Scott, however, we find no merit here in plaintiff's contention that the trial court erred in failing to submit to the jury a factual issue as to whether the negligence of the longshoremen themselves created an unseaworthy condition which could render the shipowner liable to Logan for his injuries. Suffice it to say that the evidence in the instant case would not warrant the submission of such issue to the jury.

Reversed and remanded.

---

1. Interrogatory No. 1 in the instant case is as follows:

   "(1) If Old Dominion Stevedoring Corporation, its agents or employees, were negligent in handling the skids of nails aboard the M/S HAVTROLL, was such negligence, without regard to unsea-

worthiness, the sole proximate cause of the plaintiff's accident?
   "YES (X)        NO ( )
   "(If question 1 is answered in the affirmative, the jury shall *not* answer any further questions. Otherwise the jury *must* answer the remaining questions unless otherwise indicated.)"